**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

|  |  |  |
|---|---|---|
| KAMILLE SMITH, | ) | |
| | ) | Civil Action No. ___7:22cv568___ |
| LEONARD SMITH, | ) | |
| | ) | |
| Z.S.1, a minor, by Leonard Smith, | ) | |
| her father and next friend, | ) | |
| | ) | |
| AND | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Z.S.2, a minor, by Leonard Smith, | ) | |
| his father and next friend, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| WALMART INC. | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| WAL-MART STORES EAST, LP | ) | |
| d/b/a/ Wal-Mart Neighborhood Market, | ) | |
| | ) | |
| **SERVE**: C T CORPORATION SYSTEM | ) | |
| 4701 Cox Rd., Suite 285 | ) | |
| Glen Allen, VA, 23060-6808 | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| JANE DOE, | ) | |
| An employee of Wal-Mart Stores East, LP | ) | |
| | ) | |
| *Defendants*. | ) | |

## COMPLAINT

Kamille Smith ("Ms. Smith"), Leonard Smith ("Mr. Smith"), Z.S.1 ("Z1"), and Z.S.2

("Z2") (collectively, "the Smiths"), by and through undersigned counsel, bring this action against

Defendants Walmart Inc. and Wal-Mart Stores East, LP (collectively, "Walmart") and their

1

employee, Jane Doe (collectively, "Defendants") under Title II of the Civil Rights Act of 1964, codified at 42 U.S.C. §2000a, and the common law of Virginia.

## INTRODUCTION

1.      On June 23, 2022, a Walmart employee racially profiled, defamed, and falsely imprisoned the Smiths because it retained an inferior Walmart employee to police shoplifting instead of using a specialized loss prevention officer ("LPO").

2.      Plaintiff has evidence that: 1) Walmart empowered Jane Doe to police shoppers at a Neighborhood Walmart ("the store") instead of using a specialized LPO; 2) Jane Doe racially profiled the Smiths (who are African American), stopped them as they were exiting the store after checking out; 3) Jane Doe loudly, repeatedly, and wrongfully accused the Smiths of stealing in front of the store while it was packed with shoppers, including neighbors and the Smith children's classmates; 4) Jane Doe refused to look at the Smiths' receipt when they repeatedly offered it to prove they had paid for all items; 5) Jane Doe loudly told the Smiths they were all going to jail and could not leave the store; and 6) the Smiths were held against their will at the front of the store in plain view of all customers entering or exiting the store for approximately 30 minutes until the police arrived and released them.

## I.      JURISDICTION AND VENUE

3.      This action arises under 42 U.S.C. §2000a and the common law of the Commonwealth of Virginia.

4.      Plaintiffs bring this Complaint under 28 U.S.C. § 1331 because it arises under federal law and 28 U.S.C. § 1332 because the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

2

5.      This Court has supplemental jurisdiction over Plaintiffs' state law claims because they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy …." 28 U.S.C. § 1367.

6.      Venue lies in this judicial district because the Neighborhood Walmart where Plaintiffs were racially profiled, defamed, and falsely imprisoned is located in Roanoke County, Virginia.

## II.      PARTIES

7.      Plaintiff, Kamille Smith, is an adult citizen and resident of the Commonwealth of Virginia. Ms. Smith is a premier banker at a large national bank. Because of the large sums of money Ms. Smith handles on a daily basis, her reputation for honesty and trustworthiness is absolutely critical.

8.      Plaintiff, Leonard Smith, is an adult citizen and resident of the Commonwealth of Virginia. Mr. Smith is a military veteran and chief caretaker of the Smith children.

9.      Plaintiff, Z1, is a minor child. Z1 is a citizen and resident of the Commonwealth of Virginia. Z1 is an honor student taking AP classes in high school and studies Criminal Justice at Burton. Z1 plays basketball for the high school team and plans to attend law school after completing college.

10.     Plaintiff, Z2, is a minor child. Z2 is a citizen and resident of the Commonwealth of Virginia. Z2 is also an honor student and serves as class president at his school.

11.     The Smiths are African American. None of the Smiths has ever previously been accused of committing a crime.

12.     Defendant, Walmart Inc. is a Delaware corporation with its principal place of business located at 702 SW 8th St., Bentonville, AR, 72716. Walmart Inc. is one of the largest

and wealthiest companies in the world, with a reported market cap of $392.8 billion and revenue of $542.0 billion in 2021. Walmart Inc. and Wal-Mart Stores East, LP operate the Neighborhood Walmart store in which the Smiths were defamed and unlawfully held against their will.

13.    Defendant, Wal-Mart Stores East, LP is a Delaware limited partnership with its principal place of business located at 702 SW 8th St., Bentonville, AR, 72716. The particular Walmart store in which Plaintiffs were defamed and unlawfully held against their will is listed as a d.b.a of Wal-Mart Stores East, LP.

14.    Defendant, Jane Doe, was an adult Walmart employee when she racially profiled, defamed, and held the Smiths against their will at the Neighborhood Walmart on April 23, 2022. Ms. Doe's address is unknown.

## III.    LEGAL FRAMEWORK

### A.  Section II of the Civil Rights Act of 1964, 42 U.S.C. §2000a

15.    The Civil Rights Act of 1964 was enacted to "[e]liminate the unfairness, humiliation, and insult of racial discrimination in facilities which purport to serve the general public." H.R.Rep.No. 88-914 (1964).

16.    Under 42 U.S.C. §2000a(a), "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination on the ground of race, color, religion, or national origin."

17.    Title II defines "place of public accommodation" to include hotels and other lodging establishments, restaurants and similar places where food is served to be eaten on premises, gas stations, theaters, stadiums, and similar entertainment venues. 42 U.S.C. §2000a(b). This term also includes establishments located within a place of accommodation "or (ii) within the

4

premises of which is physically located any such covered establishment and (B) which holds itself out as serving patrons of any such covered establishment." 42 U.S.C. §2000a(b)(4) (emphasis added.)

18.    For 42 U.S.C. §2000a to apply, the goods served or sold must affect interstate commerce – a term which is defined broadly to include any good that has traveled across state lines. 42 U.S.C. §2000a(c).

19.    Victims of Title II discrimination may file suit against the offending parties to obtain declaratory and injunctive relief. 42 U.S.C. §2000a-3(a). The Attorney General of the United States is also permitted to intervene in cases of public importance. Id.

20.    The Court may also allow the prevailing plaintiff reasonable attorney's fees associated with bringing the claim. 42 U.S.C. §2000a-3(b).

### B.    Defamation per se

21.    In Virginia, defamatory words are actionable per se if they "impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished." Schnupp v. Smith, 249 Va. 353, 359 (1995).

22.    "[C]rimes of moral turpitude are those involving lying, cheating, and stealing, including making a false statement and petit larceny." Id.

23.    When words are actionable per se at common law, compensatory damages for injury to reputation, humiliation, and embarrassment are presumed. Great Coastal Express v. Ellington, 230 Va. 142, 151 (1985).

24.    Defamation victims may also recover punitive damages because defamation is an intentional tort.

C.     **False Imprisonment**

25.     "False imprisonment is restraint of one's liberty without any sufficient cause therefor." Blevins v. Cabela's Wholesale Inc., 2018 U.S. Dist. LEXIS 79960, *35 (W.D. Va. 2018) (quoting Zayre of Va., Inc. v. Gowdy, 207 Va. 47 (Va. 1966)).

26.     "To maintain an action for false imprisonment it is not necessary to show malice, ill will or the slightest wrongful intention, and neither the good faith of a defendant nor that of his employee will defeat a plaintiff's right to recover." Blevins, 2018 U.S. Dist. LEXIS at *35.

27.     Under Virginia law, a merchant falsely imprisons a suspected shoplifter when its agent unreasonably detains the suspect longer than necessary to determine if the customer has shoplifted. Id. at *27.

28.     Under Va. Code Ann. § 8.01-226.9, a merchant may only detain a suspected shoplifter if the merchant (or its agent or employee) had probable cause to believe the person had shoplifted. The outer limit of such an investigation is one hour, but the merchant may not detain the suspect longer than is necessary to perform a reasonable investigation. Blevins, 2018 U.S. Dist. LEXIS at *27.

29.     This immunity does not extend to situations "in which the tort is committed in a willful, wanton or otherwise unreasonable or excessive manner." Id.

30.     "Under Virginia law, probable cause is defined as knowledge of such facts and circumstances to raise the belief in a reasonable mind, acting on those facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." Id. at *26.

31.     "Whether probable cause exists depends on what an ordinary prudent person would do in the circumstances and is a question for the jury." Id. at *27.

32.     Even an otherwise justified detention becomes unreasonable when it exceeds the time needed to conduct a reasonable investigation.  Id.

33.     Shoppers who are falsely imprisoned against their will without justification may recover both compensatory and punitive damages.

### IV.     STATEMENT OF FACTS

34.     Plaintiffs, the Smiths, were shopping as a family at their Neighborhood Walmart located at 4950 Plantation Rd., Roanoke, VA 24019 on April 23, 2022.  This store is only .6 miles from the Smiths' home and they frequented it often prior to the events that occurred that date.

35.     Plaintiffs selected the items to be purchased and placed them all in their cart.  At no time did Plaintiffs conceal any item while inside the store.

36.     Plaintiffs then proceeded to the check-out area, processed their items, verified payment, and obtained a receipt for the purchase on Ms. Smith's phone.

37.     After verifying they had obtained the digital receipt on Ms. Smith's phone, the family proceeded toward the exit as a group.  Ms. Smith kept her digital receipt ready on her phone to show any Walmart employee who requested to see it.

38.     As the Smith family neared the exit door, Walmart's employee, Jane Doe, loudly yelled, **"They're stealing! They're stealing!"**

39.     Initially, the Smiths ignored the noise and continued toward the exit.

40.     When the employee repeated the accusation, the Smiths looked around and saw customers looking in their direction.

41.     Stunned, the Smiths stopped, turned around, and began to push the cart back in the direction of the raucous employee.

7

42.     Another customer ("Ms. Dee") who had been checking out at the cash register next to the Smiths was equally stunned at this accusation and asked Ms. Smith, **"Is she playing? Do you all know each other?"** "No," Ms. Smith responded. "We don't know her."

43.     Stunned, Ms. Smith asked Jane Doe, "What did we steal?"

44.     The Walmart employee responded, "Everything in your buggy!"

45.     Ms. Smith asked Jane Doe if she would like to see her receipt.  "We didn't steal anything.  **Here is the receipt"** she said, holding up her phone trying to show the employee the digital receipt with proof of payment.

46.     **"No!"** Jane Doe said. Shockingly, the employee bizarrely declared there was no need to see a receipt because she "knew" the Smiths were stealing.

47.     When Ms. Smith again said, **"Look, here is the receipt.  Would you like to see the receipt?"** the employee astonishingly declined again, saying **"No, because you got caught!"**

48.     Attempting to resolve the situation, Ms. Smith again offered to show the receipt and asked for a manager. **"Here is the receipt. Where is your manager?"** said Mrs. Smith.

49.     But Jane Doe loudly responded, **"Oh don't worry about that because y'all going to jail!"** The employee did not distinguish between Mrs. Smith and the rest of the family; she confidently accused the entire family of stealing and told them they were <u>all</u> going to be taken to jail (<u>including the children!</u>).

50.     Jane Doe's accusations attracted the attention of the other customers in the front of the store.

51.     Among those who heard the remarks were the Smiths' neighbors and Z.S.2's classmates, Jane Doe 2 and Jane Doe 3 ("the classmates").

52.     The classmates asked Z.S.2 if he and his family got caught stealing.  Z.S.2 assured them his family had nothing wrong and this was just a misunderstanding.

53.     At this point, Ms. Dee again remarked, **"This is so embarrassing, what they're doing to you folks!** I can't believe she's yelling like this." Ms. Dee continued, noting, **"You all couldn't have been stealing, you were in the check out right in front of her."**

54.     Again, Mrs. Smith asked for a manager. Jane Doe refused once more saying, "The manager's on break."

55.     The Smiths said they needed to speak with someone or they were going to leave. But the Walmart employee responded. **"If you leave, you're getting arrested!"**

56.     Ms. Smith responded, "Then please go find us a manager. There has to be more than one manager in the store."

57.     By this point, another Wal-Mart associate ("second employee") came over, as well. The second employee stood watch over the Smiths to ensure they didn't leave so Jane Doe could step away for a moment.  Over the next 10-15 minutes, Jane Doe and the second employee took turns guarding the Smiths until the police arrived.

58.      When the Smiths insisted someone get them a manager, Jane Doe told them there were "no managers in the store" and the entire group had to wait there until "at least 7:00 p.m." for a manager to get back.

59.     "This is crazy," Ms. Smith responded.  **"You expect us to just wait here?"** Ms. Smith asked, explaining she had a receipt and places to go.

60.     Jane Doe callously responded, **"Yes, unless you want to get arrested! Ha ha ha!"**

61.     Throughout this ordeal, the Smiths were humiliated, falsely accused, and unreasonably imprisoned against their will on false charges.

62.     **"Mama, Mama, my friends Jane Doe 2 and Jane Doe 3 are in here,"** said 10-year-old Z.S.2, humiliated that his school friends, who were in the store a few registers down, were witnessing this fiasco. **"Mama, this is so embarrassing,"** cried the Smiths' 14-year-old daughter, Z.S.1

63.     **"Are we going to jail, Mama?"** The children asked. **"Can we leave?"**

64.     "No," their parents responded.  "We have to wait for the police."

65.     At this point, the Smiths called the police. On the call, the Smiths told the police that Wal-Mart has accused the family of "stealing," told them they're "going to jail," and detained them in the store in front of all the other customers telling them they can't leave. Mr. Smith asked for a police officer to come as soon as possible.

66.     Approximately 10-15 minutes later, two police officers arrived. Shortly thereafter, three Wal-Mart store managers also came to the front of the store where the Smiths were being detained.

67.     Ms. Smith immediately offered to show everyone the digital receipt and began to explain what unfolded. However, the store managers cut her off. Instead of asking for the receipt, one of the managers said there was no need for them to look at the receipt because he recognized the family and he knew they weren't stealing anything.

68.     The manager asked another store employee where Jane Doe went.  "Where is she? Where is she?" the manager asked. Not seeing her, the manager angrily continued, **"Oh, let me guess, she ran off on her cellphone again?"**

69.     The manager further commented on how he was not shocked that it was this particular employee who caused this situation and said something to the effect of, **"Not again,"** referring to this employee causing another problem.

10

70.     At this point, Jane Doe returned. As the manager stepped away from the Smiths to escort Jane Doe to the back of the store, Jane Doe turned to the Smith family, smiled, and spitefully **stuck her tongue out** at the family. The Smiths left the store with a cart full of goods and their dignity stripped from them.

71.     At no point throughout this humiliating ordeal did **any** Wal-Mart employee look at or even ask for a receipt.

72.     The Smiths arrived home shortly thereafter.  When they arrived, they learned that word had already spread on social media that the Smiths – children included – were "going to jail" for "stealing from Wal-Mart."

73.     The Smiths' other daughter, Z3 (who had not gone to the store or spoken with her parents), immediately asked her family if they were going to jail for stealing from Wal-Mart. Z3 had already heard about the ordeal because her friends, who were in the store and witnessed what happened, had been using social media to tell other friends.

74.     Z3's friends told her they heard a Wal-Mart associate had accused her family of stealing and said they were going to jail.

75.     The next morning, when 10-year-old Z2 got on the bus to go to school, the other children on the bus immediately approached and teased him about what happened in Wal-Mart the night before and asked whether his family spent the night in jail after they were caught stealing.

76.     14-year-old Z1 had a similar experience on the bus she rode to school.

77.     Z1 and Z2, who have risen to the top of their respective classes through hard work, sacrifice, and outstanding parenting, have endured teasing, bullying, humiliation, and emotional distress as a result of Jane Doe's vile accusations that spread throughout the student body via social media.

11

78.     Mr. Smith, a military veteran who proudly defended our rights and freedoms, suffered enormous stress and humiliation from being told his wife and children were going to jail for something he knew none of them had done.  Mr. Smith's existing hypertension was greatly aggravated by this incident – so much so that he suffered a stroke hours after recounting the incident to his attorneys.  As a result, Mr. Smith spent several days in the hospital and received tens of thousands of dollars in medical treatment.

79.     Ms. Smith was likewise humiliated and experienced great fear that she would lose her job when her employer learned she had been accused of stealing.  Ms. Smith was already grieving the recent loss of her mother when this event occurred.  Following the event, Ms. Smith experienced extreme depression, lost wages, and an extended absence from work while she received emotional and psychological counseling.

V.     **CAUSES OF ACTION**

**COUNT I**
**Title II of the Civil Rights Act of 1964**

80.     Plaintiffs re-allege and incorporate by reference paragraphs 1-79 as if fully set forth herein.

81.     The operations at the Walmart Neighborhood Market affect commerce because the items sold there (both at the gasoline station and in other areas of the store) travel in interstate commerce.  42 U.S.C. §2000a(c).

82.     The "Walmart Fuel Station" located on the Walmart Neighborhood Market premises at 4950 Plantation Rd, Roanoke, VA 24019 is a "place of public accommodation" as that term is defined in Title II because it is a "gasoline station" and its operations affect interstate commerce.  42 U.S.C. §2000a(b)(2).

83.    Not only is the Walmart Fuel Station located on the premises of the Walmart Neighborhood Market, it also bears the same address and is listed on Walmart.com as a "Store Service" for this Walmart Neighborhood Market.  (See **Exhibit 1**.)

84.    Because the Walmart Neighborhood Market contains a gasoline station on its premises and "holds itself out as serving patrons of" that gasoline station, it is a "place of public accommodation" under 42 U.S.C. §2000a(b)(4).

85.    Because the Walmart Neighborhood Market is a place of public accommodation, the Smiths are and were "entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations [of the Walmart Neighborhood Market] without discrimination or segregation on the ground of race, color, religion, or national origin.  42 U.S.C. §2000a(a).

86.    Walmart violated Title II when its employee, Jane Doe, denied Plaintiffs the full and equal enjoyment of the facilities, privileges, advantages, and accommodations of the Walmart Neighborhood Market by discriminating against them on the basis of their race (African American) and color (Black).

87.    Jane Doe engaged in this wrongful conduct while acting in the course and scope of her employment with Walmart.

88.    Under 42 U.S.C. §2000a-3(a), Plaintiffs are each entitled to a declaration that Walmart violated their rights under Title II and an injunction preventing them from discriminating against them on that basis in the future.

89.    Under 42 U.S.C. §2000a-3(b), Plaintiffs also ask this Court to award them reasonable attorney fees as prevailing plaintiffs.

## COUNT II
### Defamation

90.    Plaintiffs re-allege and incorporate by reference paragraphs 1-89 as if fully set forth herein.

91.    Jane Doe maliciously, intentionally, and with conscious disregard to Plaintiffs' rights, yelled loudly and repeatedly at the front of a busy Walmart store that Plaintiffs "all got caught stealing," "stole everything in [their] cart," and were "all going to jail."  Moreover, Jane Doe told other Walmart employees and Roanoke County police officers that Plaintiffs had stolen everything in their cart, even after Plaintiffs attempted repeatedly to show her the receipt proving every item in their cart had been paid for.

92.    Jane Doe engaged in this wrongful conduct while acting in the course and scope of her employment with Walmart.

93.    Jane Doe acted with wanton and reckless disregard for the truth when she maliciously and intentionally published false and defamatory statements that Plaintiffs were "all thieves" and were "all going to jail."  These statements exposed Plaintiffs to public ridicule and significantly lowered the community's opinion of Plaintiffs.

94.    The statements that Jane Doe made about Plaintiffs are defamatory per se because they imply that Plaintiffs committed a crime of moral turpitude – specifically, larceny.

95.    As a direct and proximate result of Jane Doe's willful and malicious violations, Plaintiffs have suffered loss of reputation, embarrassment, humiliation, indignity, insult, harm, mental anguish, and reduced self-esteem.  In addition, the stress of this experience aggravated Mr. Smith's existing high blood pressure condition, resulting in his hospitalization.  Moreover, Ms. Smith, who had been grieving the loss of her mother when she and her family were publicly

14

defamed and falsely imprisoned, suffered extreme depression that required an extended period of medical leave from work.

96.    Because Defendants acted intentionally, maliciously, and with conscious disregard of Plaintiffs' rights, Plaintiffs are entitled to both compensatory and punitive damages.

97.    Because Walmart is vicariously liable for the actions of its agent, Jane Doe, both Walmart and Jane Doe are jointly and severally liable for all damages resulting therefrom.

## COUNT III
## False Imprisonment

98.    Plaintiffs re-allege and incorporate by reference paragraphs 1-97 as if fully set forth herein.

99.    Walmart's agent, Jane Doe, restrained each of Plaintiffs' liberty without sufficient cause to so restrain them.  Specifically, Jane Doe ordered Plaintiffs to stay in the store until a manager (none of whom were available) arrived and told Plaintiffs they were all going to jail if they left before a manager finally arrived.

100.    While it is not necessary to show that Jane Doe acted maliciously, her behavior indicates that she did so.  Specifically, Jane Doe publicly accused Plaintiffs of stealing everything in their cart, detained them at the front of the store under guard as a public spectacle for all who entered or left the store, refused to look at their receipt to verify they had not committed the vile crime they were alleged to have committed, and told them they were all going to jail if they left before a manager finally became available to deal with this group of "thieves" who had been caught red-handed.

101.    A person acts with probable cause when a reasonable person acting on the facts and circumstances available to them would conclude the suspect is guilty of the crime of which he/she is suspected of committing.

15

102.    No reasonable person in Jane Doe's position would have suspected Plaintiffs were guilty of shoplifting.  The Smiths processed all items, ensured the payment was processed, and kept their digital receipt immediately available on their phone to show any employee who requested to see it to confirm the items had been properly purchased.

103.    Even if Jane Doe initially had probable cause to detain Plaintiffs (and she absolutely did not), any such probable cause evaporated when Jane Doe refused Plaintiffs' repeated requests to look at their receipt to prove they had purchased the items in their cart.

104.    While Plaintiffs were ultimately permitted to leave the store without being arrested, Jane Doe's behavior unreasonably extended Plaintiffs' detention long beyond the point necessary to investigate their behavior and dispel Jane Doe's unfounded suspicions.

105.    In all respects, Jane Doe behaved in a willful, wanton, and completely unreasonable and excessive manner.

106.    At all relevant times, Jane Doe engaged in this wrongful conduct while acting in the course and scope of her employment with Walmart.

107.    Shoppers who are falsely imprisoned against their will without justification may recover both compensatory and punitive damages.

108.    As a direct and proximate result of Jane Doe's willful and malicious violations, Plaintiffs have suffered indignity, insult, embarrassment, humiliation, mental anguish, and reduced self-esteem as they remained under guard at the entrance to Walmart under threat of arrest if they left.

109.    Because Defendants acted intentionally, maliciously, and with conscious disregard of Plaintiffs' rights, Plaintiffs are entitled to both compensatory and punitive damages.

110.   Because Walmart is vicariously liable for the actions of its agent, Jane Doe, both Walmart and Jane Doe are jointly and severally liable for all damages resulting therefrom.

## VI.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request the following:

a)   That this Court declare Walmart, through its agent Jane Doe, violated Title II of the Civil Rights Act of 1964 by discriminating against Plaintiffs on the basis of their race or color;

b)   That this Court issue an injunction forbidding Walmart from discriminating against Plaintiffs on the basis of their race or color;

c)   That this Court award Leonard Smith judgment against Defendants, jointly and severally, in the amount of Two Million Dollars ($2,000,000) in compensatory damages and Three-Hundred Fifty-Thousand Dollars ($350,000) in punitive damages for Count II (Defamation) and One Million Dollars ($1,000,000) in compensatory damages and Three-Hundred Fifty-Thousand Dollars ($350,000) in punitive damages for Count III (False Imprisonment);

d)   That this Court award Kamille Smith judgment against Defendants, jointly and severally, in the amount of Two Million Dollars ($2,000,000) in compensatory damages and Three-Hundred Fifty-Thousand Dollars ($350,000) in punitive damages for Count II (Defamation) and One Million Dollars ($1,000,000) in compensatory damages and Three-Hundred Fifty-Thousand Dollars ($350,000) in punitive damages for Count III (False Imprisonment);

e)   That this Court award Z.S.1 judgment against Defendants, jointly and severally, in the amount of Two Million Dollars ($2,000,000) in compensatory damages and Three-Hundred Fifty-Thousand Dollars ($350,000) in punitive damages for Count II (Defamation) and One Million Dollars ($1,000,000) in compensatory damages and Three-Hundred Fifty-Thousand Dollars ($350,000) in punitive damages for Count III (False Imprisonment);

f)        That this Court award Z.S.2 judgment against Defendants, jointly and severally, in the amount of Two Million Dollars ($2,000,000) in compensatory damages and Three-Hundred Fifty-Thousand Dollars ($350,000) in punitive damages for Count II (Defamation) and One Million Dollars ($1,000,000) in compensatory damages and Three-Hundred Fifty-Thousand Dollars ($350,000) in punitive damages for Count III (False Imprisonment);

g)        That this Court award Plaintiffs all reasonable attorney's fees incurred pursuing a remedy under Title II, as provided in 42 U.S.C. §2000a-3(b).

h)        That this Court award them all costs incurred pursuing a remedy in all causes of actions in which they prevail along with pre-judgment and post-judgment interest and such other and further relief as is just, equitable, and proper.

**PLAINTIFF DEMANDS A JURY ON ALL ISSUES SO TRIABLE.**

Dated:  October 3, 2022

Respectively submitted,

/s/ Christopher E. Collins

Christopher E. Collins (VSB No. 90632)
Mia Yugo (VSB No. 92975)
**YUGO COLLINS, PLLC**
25 Franklin Road, SW
Roanoke, Virginia 24011
Tel: (540) 861-1529
Direct: (540) 855-4791
chris@yugocollins.com
mia@yugocollins.com

*Counsel for Plaintiffs*