IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KAMILLE SMITH, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 7:22-cv-00568 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| WALMART, INC., *et al.*, ) | United States District Judge |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Ms. Kamille Smith ("Ms. Smith") and her husband Mr. Leonard Smith ("Mr. Smith") sued Walmart, Inc., Wal-Mart Stores East, LP (collectively "Walmart"), and Ms. Jane Doe ("Doe"), an employee of Wal-Mart Stores East, LP, both on behalf of themselves and their minor children, "Z.S.1" and "Z.S.2" (collectively, "the Smiths") for defamation, false imprisonment, and for allegedly violating Title II of the Civil Rights Act of 1964.

The case is before the court on Walmart's motion to compel arbitration and stay proceedings (Dkt. No. 18) and the Smiths' motion to strike Walmart's motion to compel (Dkt. No. 24). Following full briefing, these motions are ripe for resolution. For the reasons stated below, the court will deny the motion to strike, grant the motion to compel arbitration, and stay these proceedings pending the resolution of arbitration.

I. INTRODUCTION

A. **Plaintiffs' Factual Allegations**

On April 23, 2022, the Smiths went shopping at their local Walmart at 4950 Plantation Road in Roanoke, Virginia. (Compl. ¶ 34.) The Smiths collected their items, placed them in a cart, paid, and proceeded to leave the store with the items and a digital receipt in hand. (*Id.* ¶¶ 35–36.) However, as the family neared the exit door, Jane Doe, a Walmart employee, loudly yelled "They're stealing! They're stealing!" (*Id.* ¶ 38.) Initially, the Smiths ignored the noise and continued toward the exit. (*Id.* ¶ 39.) But when Doe repeated the accusation, the Smiths looked around and saw customers looking in their direction. (*Id.* ¶ 40.) The Smiths then stopped, turned around, and pushed the cart back toward Jane Doe. (*Id.* ¶ 41.)

Stunned, Ms. Smith asked Doe "what did we steal?" (*Id.* ¶ 43.) The Walmart employee responded, "everything in your buggy!" (*Id.* ¶ 44.) The Smiths offered their digital receipt as evidence that they had not stolen anything, but Doe ignored it, maintaining that the family "got caught." (*Id.* ¶¶ 45–48.) The Smiths then asked to speak with a manager. (*Id.* ¶ 47.) Doe loudly responded, "Oh don't worry about that because y'all [are] going to jail!" (*Id.* ¶ 49.) Doe's responses were so pronounced that they attracted the attention of other customers, including school classmates of Z.S.1 and Z.S.2. (*Id.* ¶¶ 50–54.) The Smiths insisted that they speak to a manager or another employee; otherwise, they would leave the store. Doe responded: "if you leave, you're getting arrested!" (*Id.* ¶ 55.)

By this point, another Walmart employee came over to the area. The second employee stood watch over the Smiths to ensure they did not leave so that Doe could step away for a moment. Over the next 10 to 15 minutes, Doe and the second employee took turns guarding the Smiths until the police arrived. (*Id.* ¶ 57.) When the Smiths insisted someone get them a

manager, Doe told them there were "no managers in the store" and that the entire group would have to wait there until "at least 7:00 p.m." for a manager to get back. (*Id.* ¶ 58.)

Eventually, the Smiths voluntarily called the police, told them that a Walmart employee had accused the family of stealing and detained them in the store, and asked for a police officer to come as soon as possible. (*Id*. ¶ 65). Approximately 10 to 15 minutes later, two police officers arrived. Shortly thereafter, three Walmart store managers also came to the front of the store where the Smiths were being detained. (*Id.* ¶ 66.) Ms. Smith immediately again offered to show everyone the digital receipt and began to explain what unfolded. However, the store managers cut her off. Instead of asking for the receipt, one of the Walmart managers told the other employees that there was no need for them to look at the receipt because he recognized the family and he knew they were not stealing anything. (*Id*. ¶ 67.) The manager further commented that he was not shocked that it was this particular employee (Jane Doe) who caused this situation and said something to the effect of, "not again." (*Id.* ¶ 69.) Jane Doe was eventually escorted to the back of the store away from the Smiths. As she was being escorted away, Doe "spitefully stuck her tongue out at the family." (*Id.* ¶ 70.)

At no point throughout the situation did a Walmart employee attempt to confirm whether the Smiths had a valid digital receipt—even after the Smiths had volunteered to share it. (*Id.* ¶ 71). The Smiths are Black; however, there are no allegations indicating that any Walmart employee made any overt comment or implicitly suggested the Smiths had been detained because of their race, color, or ethnicity.

**B. Factual Background as to the Motion to Compel**

Prior to the incident in question, Ms. Smith had begun using the Spark Driver Platform ("Spark Driver"), a mobile app owned and administered by Walmart that allows independent

contractors to provide shopping and delivery services for retailers and consumers. (Defs.' Mem. Supp. Mot. Compel, Dkt. No. 19, at 2). Ms. Smith was using the app as an independent contractor—not as a consumer. (*Id.*) As part of her agreement to provide services via the Spark Driver app, on January 6, 2022, Ms. Smith signed a Non-Disclosure and Dispute Resolution Agreement containing an arbitration provision; that provision was in effect during the Walmart incident described above. (*Id.* 3; Dkt. No. 19-1 at 15–27 (non-disclosure and dispute resolution agreement), 28 (indicating Ms. Smith's electronic signature).) The agreement provides in relevant part that:

> [t]he parties expressly agree that this Arbitration Provision is governed exclusively by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") . . . . Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of *all disputes between the Parties*, and requires *all such disputes* to be resolved on an individual basis and only by an arbitrator through final and binding arbitration and not by way of a court or jury trial, nor a proceeding before any other governmental body, and not by way of a class, collective, mass, or representative action or proceeding.

(*Id.* (emphasis added).)[1] In a later subsection titled "Claims Covered By Arbitration Provision," the agreement explicitly provides that, "unless expressly limited below," the FAA and this Arbitration Provision "shall apply to *any and all disputes between the Parties*," including "*but not limited to*" disputes regarding any city, county, local, state, or *federal* . . . discrimination or harassment [law]."

## C. Procedural History

The Smiths filed their complaint on October 3, 2022. (Dkt. No. 1.) The complaint

---

[1] As an aside, under the terms of the Non-Disclosure and Dispute Resolution Agreement, Ms. Smith had the option of opting out of the arbitration agreement. (*See* Dkt. No. 19-1 at 15 (providing for binding arbitration "unless you opt out of arbitration as provided in the Arbitration Provision").) However, no evidence in the record indicates that Ms. Smith ever did so.

4

alleges three causes of action: (1) that Walmart, a place of public accommodation, discriminated against the Smiths because of their race and color, in violation of Title II of the of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, *et seq.* (*id*. ¶¶ 80–89); (2) that Doe, acting in the course and scope of her employment with Walmart, defamed the Smiths by repeatedly accusing them of stealing (*id*. ¶¶ 90–97); and (3) that Doe, acting in the course and scope of her employment with Walmart, falsely imprisoned the Smiths by detaining them "long beyond the point necessary to investigate their behavior and dispel [her] unfounded suspicions" (*id*. ¶¶ 98–106).

On November 7, 2022, Walmart both answered the complaint as to the state-law tort claims (Answer, Dkt. No. 7) and moved to dismiss the Title II claim (Dkt. No. 5). In its answer, Walmart denied the vast majority of the Smiths' allegations and stated as an affirmative defense (among others) that a binding arbitration agreement existed between Ms. Smith and Walmart, and that Ms. Smith's claims must be arbitrated as a result. (Answer ¶¶ 112–13.)

On April 13, 2023, prior to any ruling on the pending motion to dismiss, Walmart filed a motion to compel arbitration and stay proceedings (Dkt. No. 18), arguing that Ms. Smith's claims against Walmart specifically must be arbitrated pursuant to the arbitration provision of the Non-Disclosure and Dispute Resolution Agreement. Ms. Smith opposed the motion, arguing that her claims exceeded the scope of the arbitration agreement, that Walmart had forfeited its right to compel arbitration by engaging in pre-trial activity inconsistent with an intent to arbitrate, and that even if *Ms. Smith* was required to arbitrate *her* claims, the court should not stay the proceedings for the remaining plaintiffs. (Pls.' Mem. Opp'n Defs.' Mot. Compel, Dkt. No. 20, at 2.)

On June 19, 2023, the Smiths moved to strike Walmart's motion to compel arbitration, which Walmart opposed. (Pls.' Mot. Strike, Dkt No. 24; Def.'s Mem. Opp'n Pls.' Mot. Strike,

5

Dkt No. 26.)

## II.  STANDARD OF REVIEW

**A.  Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  Congress enacted the FAA to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts."  *Gilmer v. Interstate/Johnson, Lane Corp.*, 500 U.S. 20, 24 (1991).  When parties have an agreement in writing to arbitrate, the FAA requires that district courts stay the action so long as it is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement . . . ."  9 U.S.C. § 3.  The FAA "reflects a liberal federal policy favoring arbitration agreements as a means of settling disputes."  *Payton v. Nordstrom, Inc.*, 462 F. Supp. 2d 706, 708 (M.D.N.C. 2006) (internal quotations omitted).  "[D]ue regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [should be] resolved in favor of arbitration."  *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).  Accordingly, the Fourth Circuit has observed that "[i]f the issues in the case are within the contemplation of the arbitration agreement, the FAA's stay-of-litigation provision is mandatory, and there is no discretion vested in the district court to deny the stay."  *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001).

To compel arbitration under the FAA, the movant must demonstrate: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the [matter] . . . to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."  *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002)

6

**B. Motion to Strike**

Under this court's Local Rules, "[t]he moving party is responsible to set a motion for hearing or to advise the Court that all parties agree to submission of the motion without a hearing," and "[u]nless otherwise ordered, a motion is deemed withdrawn if the movant does not set it for hearing (or arrange to submit it without a hearing) within 60 days after the date on which the motion is filed." W.D. Va. Civ. R. 11(b). However, because "the local rule only states that motions are deemed withdrawn 'unless otherwise ordered'" the court still "retains the authority to determine a motion without oral hearing pursuant to Fed. R. Civ. P. 78(b) and Local Rule 11(b)." *Hawkins v. Fishbeck*, 301 F. Supp. 3d 650, 661 (W.D. Va. 2017) (quoting W.D. Va. Civ. R. 11(b)). In short, the court retains the discretion to admit a motion even if it was proffered in violation of Local Rule 11(b). *Id.*

### III. DISCUSSION

**A. Motion to Strike.**

Per Local Rule 11(b), as a matter of course Walmart should have either requested a hearing or otherwise indicated that both parties were content to submit their respective motions without a hearing. However, the court retains the authority to determine a motion without oral hearing pursuant to Fed. R. Civ. P. 78(b). *See Hawkins*, 301 F. Supp. 3d at 661. In this instance, the court has sufficient information to rule on the motion to compel based on the briefing, and the Smiths would not be prejudiced on the merits by the court not holding a hearing, as they likewise did not request one. Local Rule 11(b) allows this court to "order otherwise"—that is, to deviate from the general 60-day window to seek a hearing—and it will do so in this case. Because the briefing on the motion to compel is sufficient for the court to issue a ruling, the Smiths' motion to strike will be denied.

B. **Motion to Compel Arbitration**

In any dispute as to the enforceability of an arbitration provision, there are two "gateway matter[s]" that the court must address: (1) whether a valid agreement to arbitrate exists; and (2) whether the terms of the agreement contemplate the factually pleaded legal issues presented in the complaint.[2] *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *A & G Coal Corp. v. Integrity Coal Sales, Inc.*, 600 F. Supp. 2d 709, 715–16 (W.D. Va. 2009); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999).

Section 4 of the FAA requires the court to conduct a trial of the issue only if "sufficient facts support a party's denial of an agreement to arbitrate." *Berkeley Cnty. Sch. Dist. v. Hub Int'l, Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (internal quotations omitted). However, the right to a jury trial "is not automatic." *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015). Just as in traditional litigation, the district court must employ the summary judgment standard as a gatekeeper, so a trial occurs only if there are "genuine issues of material fact." *Id.*; *see also Hub Int'l*, 944 F.3d at 234. In applying that standard, "[the] defendant who seeks to compel arbitration . . . bears the burden of establishing the existence of a binding contract to arbitrate the dispute." *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 456 (4th Cir. 2017).

To meet that burden, Walmart asserts that, as part of her work with the Spark Driver platform, Ms. Smith signed the Non-Disclosure and Dispute Resolution Agreement noted earlier. That agreement contains an arbitration clause. (Dkt. No. 19-1 at 18.) Walmart provided a copy

---

[2] On brief, Ms. Smith did not argue the third *Adkins* element—whether this dispute sufficiently relates to interstate or foreign commerce. Accordingly, the court will not address that element. *See, e.g., Schwartz v. Wellin*, No. 2:13-cv-3595-DCN, 2014 WL 12637912, at *3 (D.S.C. Aug. 14, 2014) ("[I]t is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel," and "perfunctory and undeveloped arguments . . . are waived") (quoting *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010)).

of the agreement and of electronic records indicating that Ms. Smith signed it on January 6, 2022. (Dkt. No. 19-1 at 15–28.) Ms. Smith does not affirmatively dispute that she signed the agreement or that it contains an arbitration clause. (*See* Dkt. No. 20 at 2.) Walmart has thus met its burden to demonstrate that it had an arbitration agreement with Ms. Smith.

The second—and somewhat thornier—question is whether the terms of the agreement contemplate the legal issues implicated in the Smiths' complaint. The court finds that they do. The language of the arbitration provision is exceptionally broad. (*See* Dkt. No. 19-1 at 15–27.) Unlike most arbitration clauses, the agreement between Ms. Smith and Walmart is not limited to disputes arising under or relating to the contract itself. *See, e.g.*, *Long v. Silver*, 248 F.3d 309, 313 (4th Cir. 2001) (interpreting "very broad" arbitration clause that applied to "[a]ny and all disputes . . . arising out of or in connection with this Agreement"). Rather, it applies to "any and all disputes between the Parties," regardless of whether there is any nexus between the dispute and Ms. Smith's work as an independent contractor on the Spark Driver app.[3] (Dkt. No. 19-1 at 21.) Notably, although the arbitration provision provides an example list of claims that must be submitted to arbitration under the agreement, the provision is explicitly "not limited to" those enumerated claims. (*Id.*) And none of the claims described in the section titled "Limitations on Application of This Arbitration Provision"—such as claims for workers compensation, state disability insurance, or unemployment insurance benefits—are applicable here. (*Id.* 22.) Thus,

---

[3] In its briefs, Walmart repeatedly asserts that Ms. Smith was shopping at Walmart in her capacity as a service provider for the Spark Driver app, and not for her family, when this incident occurred. (*See, e.g.*, Dkt. No. 20 at 2 (claiming that Ms. Smith "was performing shopping and delivery services on the Spark Driver Platform").) But other than the bare assertion in its brief, Walmart does not cite to any affidavit or other evidence so indicating. Given that Walmart's representation implicitly (if not explicitly) contradicts the allegation in the complaint that the Smiths "were shopping as a family at their Neighborhood Walmart" when this incident occurred (Compl. ¶ 34), there remains a dispute of fact as to whether Ms. Smith was indeed working for the Spark Driver app at the time. However, because this broad arbitration provision would apply regardless of whether Ms. Smith was working for the Spark Driver app at the time, the court finds that this dispute of fact is not material to the legal issues raised in the motion to compel.

because Ms. Smith's Title II, defamation, and false-imprisonment claims are all "disputes between the Parties" (i.e., Ms. Smith, Walmart, Inc., and Wal-Mart Stores East, LP), they must be submitted to arbitration.

The Fourth Circuit recently reached the same conclusion as to a similarly broad arbitration agreement in *Mey v. DIRECTV, LLC*, 971 F.3d 284 (4th Cir. 2020). There, the court found that the plaintiff was required to submit her Telephone Consumer Protection Act ("TCPA") claim to arbitration because she had signed an agreement with AT&T (a DIRECTV affiliate) to arbitrate "all disputes and claims between us," including, "but not limited to . . . claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory." *Id.* at 287. The court surveyed cases analyzing arbitration clauses which applied to any dispute "arising out of or related to" the underlying contract,[4] but ultimately observed that the arbitration clause in the plaintiff's contract was "much more expansive" than the clauses in those cases. *Id.* at 293. Thus, the court reasoned that "[p]recedent analyzing whether a 'significant relationship' exists between the dispute and the contract" was "inapposite" to the contractual language before it and held that that contract required arbitration. *Id.*

The same is true here. Indeed, "the presumption in favor of arbitrability is particularly applicable when the arbitration clause is broadly worded," as it is here. *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 267 (4th Cir. 2011). The court's role is to ask merely whether this arbitration provision is "*susceptible* of an interpretation that covers the asserted dispute." *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996) (emphasis added) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83

---

[4] The principal case on which Ms. Smith relies— *Jackson v. Amazon*, 65 F.4th 1093 (9th Cir. 2023)—falls into this category and is inapposite here for the same reasons as articulated in *Mey*.

10

(1960)).  In light of the expansive text of this arbitration provision, the court must conclude that it is "susceptible of an interpretation" that covers Ms. Smith's claims against Walmart.  Accordingly, the court must enforce the contract "according to [its] terms," *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019).

      Ms. Smith also argues that Walmart waited too long to bring its motion to compel and, as a result, has forfeited any right to arbitration by default.  Under the FAA, a party loses its right to demand arbitration "if it is 'in default in proceeding with such arbitration.'"  *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 342 (4th Cir. 2009) (quoting 9 U.S.C. § 3).  "Default occurs when a party demanding arbitration 'so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice' the opposing party."  *Bonumose Biochem LLC v. Zhang*, No. 3:17-CV-00033, 2018 WL 3733651, at *6 (W.D. Va. Aug. 8, 2018) (quoting *Forrester*, 553 F.3d at 343).  The opposing party bears the burden of showing default.  *Id*.  "The tardy invocation of arbitration is not enough to find default, particularly when the delay was relatively brief."  *Id*.  If a party "engages in pretrial activity inconsistent with an intent to arbitrate," the party opposing arbitration may more easily establish that its position has been compromised.  *Id*.  "Delay and the extent of the moving party's trial-oriented activity are material factors" to the assessment of whether the opposing party could be prejudiced in arbitration.  *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.3d 250, 252 (4th Cir. 1987).

      Here, Walmart has not acted inconsistent with an intent to arbitrate.  It timely moved to dismiss the Title II claim—which would have been necessary regardless of its right to arbitrate given that the arbitration provision only applies to Ms. Smith—and answered the complaint as to the other claims on the same day, asserting as a defense that there existed a binding arbitration

11

agreement. Although Walmart did not move to compel arbitration until six months after the complaint was filed (and five months after moving to dismiss/answering that complaint), "[n]either delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration." *Fraser*, 817 F.2d at 252; *see also Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 703 (4th Cir. 2012) (finding that a six-and-a-half month delay, without more, was insufficient to demonstrate that the opposing party suffered actual prejudice) (citing *Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.*, 380 F.3d 200, 205 (4th Cir. 2004) (finding no inherent prejudice in a four-month delay); *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 982 (4th Cir. 1985) (finding same for a six-month delay). Discovery (to the extent any has been produced) is in its infancy—the court only recently entered a protective order (Dkt. No. 10). And although requiring the nonmoving party to respond to a motion to dismiss "may factor into [the] prejudice analysis," *Rota-McLarty*, 700 F.3d at 704 n.15, the Fourth Circuit has "counsel[ed] against adopting a bright line rule that the mere filing of a dispositive motion on the merits is inherently prejudicial." *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 590 (4th Cir. 2012). Instead, the nonmoving party must show that "actual prejudice . . . resulted therefrom." *Id.* Ms. Smith has not made that showing here.

Given the liberal federal policy favoring arbitration, coupled with the language of the provision at issue here, the court will grant Walmart's motion to compel arbitration as to Ms. Smith's claims (which she also brought on behalf of Z.S.1 and Z.S.2). Additionally, "district courts have the power to stay claims [involving] a non-arbitrating party when a case involves both arbitrating and non-arbitrating parties." *Chapman–Martin Excavating & Grading, Inc. v. Hinkle Contracting Co.*, Civil Action No. 2:11–cv–00563, 2011 WL 5999868, at *4 (S.D.W. Va.

Nov. 30, 2011) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983)). "[T]he decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion to control its docket." *Am. Recovery Corp.*, 96 F.3d at 97. Here, the issues raised in Ms. Smith's claims are essentially identical to the issues raised in Mr. Smith's claims. Moreover, upon the resolution of arbitration, collateral estoppel (issue preclusion) might apply. *See, e.g.*, *Little SixCorp. v. United Mine Workers of Am., Local Union No. 8332*, 701 F.2d 26, 29 (4th Cir. 1983) ("[N]umerous cases support the application of *res judicata* or collateral estoppel when the losing party in an arbitration proceeding seeks to reopen its case in federal court."). Thus, it is appropriate to stay Mr. Smith claims against Walmart (also brought on behalf of Z.S.1, and Z.S.2) pending completion of the arbitration between Ms. Smith and Walmart.

## IV. CONCLUSION

For the reasons stated above, the Smiths' motion to strike Walmart's motion to compel arbitration and stay proceedings (Dkt. No. 24) will be denied, and Walmart's motion to compel arbitration as to Ms. Smith's claims and stay proceedings as to all plaintiffs (Dkt. No. 18) will be granted. Accordingly, the court will order enter an order staying these proceedings and directing Ms. Smith and Walmart to engage in mandatory contractual arbitration.

Entered: August 14, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge