CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
November 18, 2024
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SMITH, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 7:22-cv-00568 |
| ) | |
| WALMART INC., et al., ) | By: Elizabeth K. Dillon |
| ) | Chief United States District Judge |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiffs Leonard Smith and two of his children, Z.S.1 and Z.S.2 (Smiths), bring this action against Walmart Inc., Wal-Mart Stores East, LP d/b/a Wal-Mart Neighborhood Market (Walmart), and Jane Doe in relation to a shopping incident that occurred on or about April 23, 2022. The Smiths allege five causes of action against defendants in their proposed amended complaint: (I) racial discrimination in violation of Title II of the Civil Rights Act of 1964, (II) premises liability (pleaded in the alternative to count I), (III) defamation, (IV) false imprisonment, and (V) negligence—respondeat superior.

Pending before the court are two motions: (1) defendants' motion to dismiss Count I that alleges racial discrimination in violation of 42 U.S.C. § 2000a (Dkt. No. 5), and (2) Smiths' motion to amend their complaint (Dkt. No. 33). Both matters are fully briefed and ripe for resolution. Because the Smiths' complaint, even as amended, fails to sufficiently plead a race discrimination claim under Title II of the Civil Rights Act of 1964, Count I will be dismissed. The court will grant leave to amend as it pertains to replacing defendant Jane Doe with named defendant Honesty Jones. Having done so, the courts finds that it no longer has jurisdiction to

hear this case. The court will decline to exercise supplemental jurisdiction over the remaining state-law claims and dismiss the claims without prejudice.

## I. BACKGROUND

### A. Procedural History

The Smiths filed their initial complaint on October 3, 2022. (Dkt. No. 1.) The complaint alleges three causes of action: (1) that Walmart, a place of public accommodation, discriminated against the Smiths because of their race and color, in violation of Title II of the of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, *et seq.* (*id.* ¶¶ 80–89); (2) that Doe, acting in the course and scope of her employment with Walmart, defamed the Smiths by repeatedly accusing them of stealing (*id.* ¶¶ 90–97); and (3) that Doe, acting in the course and scope of her employment with Walmart, falsely imprisoned the Smiths by detaining them "long beyond the point necessary to investigate their behavior and dispel [her] unfounded suspicions" (*id.* ¶¶ 98–106).

On November 7, 2022, Walmart both answered the complaint as to the state-law tort claims (Dkt. No. 7) and moved to dismiss the Title II claim (Dkt. No. 5). On April 13, 2023, prior to any ruling on the pending motion to dismiss, Walmart filed a motion to compel arbitration and stay proceedings (Dkt. No. 18), arguing that Ms. Smith's claims against Walmart specifically must be arbitrated pursuant to the arbitration provision of the Non-Disclosure and Dispute Resolution Agreement.[1] On August 14, 2023, this court granted Walmart's motion to

---

[1] Prior to the incident in question, Ms. Smith had begun using the Spark Driver Platform ("Spark Driver"), a mobile app owned and administered by Walmart that allows independent contractors to provide shopping and delivery services for retailers and consumers. (Dkt. No. 19, at 2). Ms. Smith was using the app as an independent contractor—not as a consumer. (*Id.*) As part of her agreement to provide services via the Spark Driver app, on January 6, 2022, Ms. Smith signed a Non-Disclosure and Dispute Resolution Agreement containing a mandatory arbitration provision; that provision was in effect during the Walmart incident described below. (*Id.* at 3; Dkt. No. 19-1, at 15–27 (non-disclosure and dispute resolution agreement), 28 (indicating Ms. Smith's electronic signature).)

compel arbitration for Ms. Smith and the case was stayed pending resolution of arbitration. (Dkt. No. 30.)

On April 23, 2024, while Ms. Smith's claims were being arbitrated, plaintiffs filed a motion for leave to amend their complaint. (Dkt. No. 33.) During discovery, the Smiths learned new information that led to their asserting two alternative negligence-based claims against defendants and replacing defendant "Jane Doe" with "Honesty Jones."[2] (*Id.*) Defendants argue that the court should deny the Smiths' motion for leave to amend their complaint because (1) the substitution of Honesty Jones is a tactic to destroy diversity jurisdiction, (2) Smiths' proposed negligence-based claims are futile for their failure to state a claim,[3] and (3) substituting Honesty Jones for the Doe defendant is futile due to the Smiths' lack of diligence in naming her.[4] (Mem. Opp'n Am. Compl., Dkt. No. 37.)

On July 10, 2024, the stay was lifted after the parties indicated the arbitration process for Ms. Smith's claims had concluded (Dkt. No. 39), and shortly thereafter, the court was notified that Ms. Smith's claims had been fully satisfied (Dkt. No. 41). Therefore, the remaining plaintiffs are Mr. Smith and his two children, Z.S.1 and Z.S.2.

---

[2] The parties have not clarified whether discovery occurred in this case or during the arbitration proceedings. However, based on the available filings, it appears that discovery began in this case prior to the court granting the motion to compel arbitration and continued throughout the arbitration proceedings.

[3] The court does not address the futility of these state-law claims in its opinion because it has declined to exercise supplemental jurisdiction over them. *See* discussion *infra* Section II.C.

[4] Defendants also contend that the motion for leave to amend should be denied because "the proceedings have been stayed pending arbitration of [Ms.] Smith's claim[s], which has been set for a hearing." (Mem. Opp'n Am. Compl. 3.) Given that the stay has been lifted (Dkt. No. 39), this argument is moot.

B. **Smiths' Factual Allegations**[5]

On April 23, 2022, the Smiths were shopping at their local Walmart at 4950 Plantation Road in Roanoke, Virginia. (Am. Compl. ¶ 45, Dkt. No. 33-1.) The Smiths collected their items, placed them in a cart, paid, and proceeded to leave the store with the items and a digital receipt on Ms. Smith's phone. (*Id.* ¶¶ 46–48.) However, as the family neared the exit door, defendant Jones, a Walmart employee, loudly yelled, "They're stealing! They're stealing!" (*Id.* ¶ 49.) Initially, the Smiths ignored the noise and continued toward the exit. (*Id.* ¶ 50.) But when Jones repeated the accusation, the Smiths looked around and saw customers looking in their direction. (*Id.* ¶ 51.) The Smiths then stopped, turned around, and pushed the cart back towards Jones. (*Id.* ¶ 52.)

Stunned, Ms. Smith asked Jones "What did we steal?" (*Id.* ¶ 54.) The Walmart employee responded, "Everything in your buggy!" (*Id.* ¶ 55.) The Smiths offered their digital receipt as evidence that they had not stolen anything, but Jones ignored it, maintaining that the family "got caught." (*Id.* ¶¶ 56–58.) The Smiths then asked to speak with a manager. (*Id.* ¶ 59.) Jones loudly responded, "Oh don't worry about that because y'all [are] going to jail!" (*Id.* ¶ 60.) Jones' responses were so pronounced that they attracted the attention of other customers, including neighbors of the Smiths and a few classmates of Z.S.2. (*Id.* ¶¶ 60–63.) The Smiths insisted that they speak to a manager or another employee or they were going to leave the store. (*Id.* ¶¶ 65–66.) Jones responded: "[i]f you leave, you're getting arrested!" (*Id.* ¶ 66.)

By this point, another Walmart employee came over to the area. (*Id.* ¶ 68.) The second employee stood watch over the Smiths to ensure they did not leave so that Jones could step away

---

[5] The factual allegations in this section are taken from the Smiths' proposed amended complaint because those are the operative allegations for which the motions are analyzed in Section II. *infra*. (Am. Compl., Dkt. No. 33-1.)

for a moment. (*Id.*) Over the next 10 to 15 minutes, Jones and the second employee took turns guarding the Smiths until the police arrived. (*Id.*) When the Smiths insisted, once again, that someone get them a manager, Jones told them there were "no managers in the store" and that the entire group would have to wait there until "at least 7:00 p.m." for a manager to get back. (*Id.* ¶ 69.)

The Smiths allege that they were humiliated, falsely accused, and unreasonably imprisoned against their will on false charges. (*Id.* ¶ 72.) Eventually, the Smiths voluntarily called the police, requesting that they come as soon as possible because a Walmart employee had accused their family of stealing, told them they are going to jail, and detained them in the store, in front of all the customers. (*Id.* ¶ 76.) Approximately 10 to 15 minutes later, two police officers arrived. (*Id.* ¶ 77.) Shortly thereafter, three Walmart store managers also came to the front of the store where the Smiths were being detained. (*Id.*) Ms. Smith immediately offered to show everyone the digital receipt and began to explain what happened. (*Id.*) One store manager cut her off, indicating that there was no need for them to see the receipt because he recognized the Smiths and knew they would not steal anything. (*Id.* ¶ 78.) The manager further commented that he was not shocked that it was this particular employee (Jones) who caused this situation and said something to the effect of, "not again." (*Id.* ¶ 80.) Jones was then escorted to the back of the store away from the Smiths, but not before she "spitefully stuck her tongue out at the [Smith] family." (*Id.* ¶ 81.)

Shortly thereafter, the Smiths left the store and returned home, only to learn that word had reached social media that the Smiths—including the children—were "going to jail" for "stealing from Wal-Mart." (*Id.* ¶ 83.) The very next morning, 10-year-old Z.S.2. was immediately approached on the bus and asked whether his family spent the night in jail after they

5

were caught stealing.  (*Id.* ¶ 86.)  His 14-year-old sister, Z.S.1., had a similar experience on the bus ride to school.  (*Id.* ¶ 87.)  The Smiths allege that their children have "endured teasing, bullying, humiliation, and emotional distress" because of the "vile accusations that spread throughout the student body via social media."  (*Id.* ¶ 88.)  Mr. Smith alleges that he suffered "enormous stress and humiliation" that greatly aggravated his hypertension which resulted in him suffering a stroke hours after recounting the incident to his attorneys.  (*Id.* ¶ 89.)

## II.  DISCUSSION

**A.  Motion to Dismiss Title II Racial Discrimination Claim Under 42 U.S.C. § 2000a**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In determining whether the plaintiff has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and any documents incorporated into or attached to it.  *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable

conclusions, or arguments,'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

Defendants move to dismiss the Smiths' race-discrimination claim in Count I, arguing that the "[c]omplaint fails to allege facts or circumstances that Walmart's employee discriminated against them because of their race or that any Walmart employee treated other similarly situated individuals less favorably." (Mem. Supp. Mot. Dismiss, Dkt. No. 6.) Defendants incorporate their motion to dismiss this claim in responding to the Smiths' motion for leave to file an amended complaint. (Mem. Opp'n Am. Compl. 5.) Finding that the Smiths fail to sufficiently allege racial discrimination under 42 U.S.C. § 2000a, the court will dismiss the Title II claim.

Under 42 U.S.C. § 2000a(a), "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." "The elements of a § 2000a claim mirror those of a § 1981 claim, and courts regularly apply the same analysis when deciding claims made under either section." *Law v. Hilton Domestic Operating Co.*, 2020 WL 7130785, at *8 (E.D. Va. Dec. 4, 2020) (citing *Taylor v. Ahold*, 2017 WL 377935, at *1 (E.D. Va. Jan. 23, 2017) ("To establish a prima facie case of Title II public accommodation [plaintiff] must show that she: (1) is a member of a protected class; (2) attempted to exercise the right to full benefits and enjoyment of a place of public accommodation; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons who are not members of the protected class.")).

7

In the Smiths' amended complaint, they allege that "Walmart violated Title II when its employee, Ms. Jones, denied Plaintiffs the full and equal enjoyment of the facilities, privileges, advantages, and accommodations of the Walmart Neighborhood Market by discriminating against them on the basis of their race (African American) and color (Black)." (Am. Compl. ¶ 97.) The amended complaint further alleges that "Ms. Jones racially profiled the Smiths" when she stopped them as they were exiting the Walmart. (*Id.* ¶ 2.) It is void of any other factual allegations that support the Smiths' Title II racial discrimination claim against defendants. The Smiths ask the court to "use its judicial experience and common sense . . . to infer that Plaintiffs were treated differently and worse than other shoppers because of their race." (Dkt. No. 12, at 6.) Under that logic, any member of a protected class alleging a Title II race discrimination claim would survive a motion to dismiss for the mere assertion that they were being racially profiled, without providing anything further. But that is not the law. To the contrary, courts frequently dismiss claims where no facts are alleged to suggest that race played a role in a particular decision or action by the defendant. *E.g.*, *Jordan v. Alternative Res. Corp.*, 467 F.3d 378, 380 (4th Cir. 2006) (affirming a district court's decision to dismiss a racial discrimination claim under 42 U.S.C. § 1981 because plaintiff "failed to demonstrate any basis from which to conclude that his own race played any role in his termination" from employment); *see also Feliciano v. Reger Grp.*, No. 1:14-cv-985, 2014 U.S. Dist. LEXIS 183364, *7 (E.D. Va. Sept. 10, 2014) (dismissing racial discrimination claim under Title VII where plaintiff made "conclusory allegation" that "she was discriminated against because of her color and her being Puerto Rican descent"). Even after accepting all well-pleaded allegations in the Smiths' amended complaint as true and drawing all reasonable factual inferences in the Smiths' favor, the court does not find that the amended complaint alleges "enough facts to state a claim to relief

8

that is plausible on its face." *Twombly*, 550 U.S. at 570.  As such, the Smiths' Title II racial discrimination claim will be dismissed.

**B. Amending Complaint to Substitute Defendant Jane Doe**

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) instructs courts to "freely give leave when justice so requires."  *Id.*  "Despite this general rule liberally allowing amendments, . . . a district court may deny leave to amend if the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile."  *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 461 (4th Cir. 2013) (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc)) (internal quotations omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the party by virtue of the allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'").

In their motion for leave to amend, the Smiths seek to replace references to "Jane Doe" with "Honesty Jones."  (Dkt. No. 33 ¶ 6.)  They note that at the time they filed their initial complaint, they did not know the identity of the employee who stopped them.  (*Id.* ¶ 4.)  It was only during discovery when they were able to identify the employee as Honesty Jones.  (*Id.* ¶ 5.) Jones is alleged to be a citizen of Roanoke, Virginia.  (Am. Compl. ¶ 16.)

Defendants argue that the Smiths seek to replace Doe with Jones as a tactic to destroy

9

diversity jurisdiction.[6]  (Mem. Opp'n Am. Compl. 5–7.)  "Given the relative financial position of Walmart, as compared to [] Jones," defendants argue that "the sole explanation" for the Smiths adding Jones is to defeat diversity.  (*Id.*)  Defendants correctly note that—if the court were to grant defendants' motion to dismiss the only federal claim before the court, as it has now done— diversity jurisdiction would be the only remaining source of the court's authority to hear this case.  Substituting Jones would defeat complete diversity of the parties, which defendants describe as a strategic "legal tactic."  (*Id.* at 7.)  In addition, defendants note that the Smiths knew of Jones' first name on April 23, 2022, the date of the incident.  (*Id.* at 3, 11.)  Furthermore, they knew of Jones' full name on May 2, 2023, when Walmart disclosed "Honesty Jones" as an individual with discoverable information.  (*Id.* at 3.)  Walmart again provided her name to the Smiths on February 16, 2024, as "an individual who had firsthand knowledge of the incident."  (*Id.*)  The Smiths deposed Honesty Jones on April 5, 2024.  (*Id.*)  The Smiths filed their motion for leave to amend their complaint on April 23, 2024.  (Dkt. No. 33.)  Although not explicitly stated in defendants' brief, the court interprets their position as arguing bad faith and undue delay on the part of the Smiths in replacing Doe with Jones in their amended complaint.

The Fourth Circuit has noted, it "cannot provide a comprehensive definition of a term like bad faith," but "courts have found bad faith for . . . lack of diligence . . . and interference . . .

---

[6] Defendants also argue that the Smiths' attempt to add Jones is futile, as her addition does not relate back to the original complaint under Virginia law. (Mem. Opp'n Am. Compl. 10–12.)  They concede that the Smiths filed their motion for leave to amend on the expiration date on the two-year statute of limitations.  However, since the case was stayed at the time pending arbitration, the Smiths' amended complaint "is not yet deemed filed." (*Id.* at 10.)  The court notes that the Smiths' filed their motion while the case was stayed "to avoid the very argument that Defendants raise . . . that Plaintiffs failed to amend prior to the expiration of the relevant statutes of limitations." (Dkt. No. 38, at 1.)  The case had been stayed for over eight months before the Smiths moved to amend their complaint.  The Smiths were not only aware of the statute of limitations but also diligent in recognizing and adhering to the deadline to ensure they filed within the required timeframe.  Regardless, equitable tolling would likely apply while the case was in arbitration. *Chao v. Va. DOT*, 291 F.3d 276, 283 (4th Cir. 2002) (recognizing "that equitable tolling is appropriate when 'extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time'" (citing *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000))).  As such, the court finds this argument to be without merit.

or failure to cooperate." *United States ex rel. Nicholson v. Medcom Carolinas, Inc.*, 42 F.4th 185, 198 (4th Cir. 2022) (internal citation omitted). In evaluating the circumstances surrounding this case, the court does not find the Smiths acted in bad faith. Defendants cite *Linnin v. Michielsens* to support dismissing a defendant in a lawsuit when "the plaintiff has nothing to gain from joining defendant [] except for defeating diversity." 372 F. Supp 2d 811, 824–26 (E.D. Va. 2005). However, that case did not involve replacing a Jane Doe defendant with a named defendant. Additionally, the court in *Linnin* found that the defendant had been fraudulently joined. *Id.* at 827. "To establish fraudulent joinder, the defendant must demonstrate either that 'there is no possibility' that the plaintiff would be able to establish a cause of action against the nondiverse defendant in state court or that 'there has been outright fraud in the plaintiff's pleading of jurisdictional facts.'" *Id.* at 818 (citing *Hartley v. CSX Transp.*, 187 F.3d 422, 424 (4th Cir. 1999)). Defendants have not demonstrated that defendant Jones was fraudulently joined, nor do the allegations of this case suggest such. Furthermore, although defendants claim that this is a legal tactic to destroy jurisdiction, they neglect to note that the amended complaint still contains the Title II racial discrimination claim that would have provided federal question jurisdiction. Therefore, the court does not find that the actions of the Smiths amount to any showing of bad faith.

In addition, the court does not find that the Smiths' motion for leave to amend was unduly delayed. From the filing of the initial complaint, the Smiths intended to include the Walmart employee as a defendant in the case but did not know the employee's identity. As defendants note, Walmart disclosed "Honesty Jones" to the Smiths on May 2, 2023. However, both parties were awaiting this court's decision on defendants' motion to compel arbitration and stay the proceedings, filed on April 13, 2023. (Dkt. No. 18.) Just over three months after the

11

Smiths learned of Jones' full name, the court granted defendants' motion to compel arbitration and stayed the case pending resolution of Ms. Smith's arbitration. (Dkt. No. 30.) As defendants argue in their brief, no filings should be made while the case is stayed. (Mem. Opp'n Am. Compl. 5–7) ("In obvious disregard for the stay of the proceedings implemented by the Court, Plaintiff's now motion for this Court to grant them leave to file an amended complaint.") Yet, they also argue that the Smiths "inexplicably" waited "nearly a year after [Jones'] full name was disclosed on May 2, 2023." (*Id.* at 11.) Defendants cannot have it both ways. Based on the filings before the court, the Smiths have not acted in bad faith or with undue delay. As such, the court will grant the Smiths' motion for leave to amend their complaint as it pertains to replacing references to "Jane Doe" with "Honesty Jones."

C. **Jurisdiction Over the Remaining Claims**

The Smiths' Title II racial discrimination claim conferred federal subject matter jurisdiction upon this court. 28 U.S.C. § 1331. In addition, with Jane Doe as a defendant, there was complete diversity of citizenship among the named parties. Now that the court is dismissing the Title II claim and substituting Honesty Jones as the individual defendant, the court must determine whether it has jurisdiction over the remaining state-law claims.

1. **Diversity jurisdiction**

Twenty-eight U.S.C. § 1332 requires complete diversity between all parties. *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806). Complete diversity requires that "no party shares common citizenship with any party on the other side." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999); s*ee also Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) ("the citizenship of every plaintiff must be different from the citizenship of every defendant"). The Smiths are citizens of the Commonwealth of Virginia. (Am. Compl. ¶

9–12.) Defendant Jones is also a citizen of the Commonwealth of Virginia. (Am. Compl. ¶ 16.) Therefore, since the Smiths and Jones are all residents of the Commonwealth of Virginia, the court does not have diversity jurisdiction over the remaining claims.

### 2. Supplemental jurisdiction

Pursuant to 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." The Fourth Circuit has instructed that "courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In exercising its discretion, the court must consider factors of judicial economy, convenience, fairness, and comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "Generally, when a district court dismisses all federal claims in the early stages of litigation, it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." *Banks v. Gore*, 738 F. App'x 766, 773 (4th Cir. 2018) (internal citations omitted). Furthermore, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*, 484 U.S. at 350 n.7.

The court believes that the balance of factors set forth in *Carnegie-Mellon* weighs in favor of declining supplemental jurisdiction here. First, declining supplemental jurisdiction over the remaining claims would not harm judicial economy. Given that this case lacks complete diversity, all of the state-law claims can be fully litigated in state court, and a future removal is highly unlikely. *E.g.*, *Flora v. Everest Wealth Mgmt., Inc.*, No. CV ELH-17-1621, 2017 WL 4280744 at *6 (D. Md. Sept. 26, 2017) ("Judicial economy does not weigh against remand.

Plaintiff's only federal claim has been abandoned.  And, because defendants cannot establish diversity jurisdiction, it is not likely that this case will return to federal court."); *c.f. Moffitt v. Residential Funding Co.*, 604 F.3d 156, 160 (4th Cir. 2010) (judicial economy weighed against remand because "these cases would likely end up in federal court regardless . . . .").

Furthermore, the court finds that declining to exercise supplemental jurisdiction would promote comity since the remaining claims are wholly based on state law.  The Fourth Circuit has noted that "our precedents evince a strong preference that state law issues be left to state courts in the absence of diversity or federal question jurisdiction . . . ." *Arrington v. City of Raleigh*, 369 F. App'x 420, 423 (4th Cir. 2010).

As to convenience and fairness to the parties, the court notes that this case is in the early stages of litigation.  Although over two years has passed since the initial complaint was filed with the court, a large portion of that time was spent arbitrating Ms. Smith's claims.  The remaining Smiths are still in the pleadings stage of litigation.  The court acknowledges that discovery has begun and that several depositions have already been taken.  However, the court does not believe that it would be particularly inconvenient to the parties to litigate these issues in state court.  Moreover, the discovery will generally be helpful in state court, too.  *See Davis v. USX Corp.*, 819 F.2d 1270, 1276 (4th Cir. 1987) (noting that parties can "agree to the use of discovered materials in any state court proceeding").  The court also acknowledges the significant amount of time and effort the parties have expended in responding to and litigating these motions.  On balance, though, the other *Carnegie-Mellon* factors outweigh any unfairness to defendants.

For all these reasons, the court declines to exercise supplemental jurisdiction over the Smiths' state-law claims. The remaining claims against Walmart Inc., Wal-Mart Stores East, LP d/b/a Wal-Mart Neighborhood Market, and Honesty Jones will be dismissed without prejudice.

### III. CONCLUSION

Because the Smiths' fail to sufficiently plead a race discrimination claim under Title II of the Civil Rights Act of 1964, Count I will be dismissed. The court will grant leave to amend as it pertains to replacing Jane Doe with Honesty Jones. The court will decline to exercise supplemental jurisdiction over the remaining state-law claims and dismiss the claims without prejudice.

An appropriate order will issue.

Entered: November 18, 2024.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge